ELKTON SPARKLER CO., PLAINTIFF *v.* U.S. DEPARTMENT OF COMMERCE AND UNITED STATES, DEFENDANTS, AND GUANGXI NATIVE PRODUCE IMPORT & EXPORT CORP., BEIHAI FIREWORKS AND FIRECRACKERS BRANCH, DEFENDANT-INTERVENOR

Court No. 91–07–00501

(Decided May 7, 1993)

*Barnes & Thornburg (Richard H. Streeter), Morgan, Lewis & Bockius (Marcela B. Stras)* for plaintiff.

*Stuart E. Schiffer,* Acting Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice *(A. David Lafer), Dean A. Pinkert,* Attorney-Advisor, Office of Chief Counsel for Import Administration, Department of Commerce, of counsel, for defendants.

*Akin, Gump, Strauss, Hauer & Feld, L.L.P. (Spencer S. Griffith)* for defendant-intervenor.

## MEMORANDUM OPINION

DiCARLO, *Chief Judge:* Defendant-intervenor, Guangxi Native Produce Import & Export Corporation, Beihai Fireworks and Firecrackers Branch (Guangxi), challenges the Department of Commerce's remand determination in the antidumping investigation of sparklers from the People's Republic of China. Guangxi raises two issues: (1) whether Commerce exceeded the scope of the court's remand order; and (2) whether the use of best information available (BIA) was appropriate. The court has jurisdiction under 19 U.S.C. § 1516a(a)(2) (1988) and 28 U.S.C. § 1581(c) (1988).

### BACKGROUND

Plaintiff, a domestic manufacturer, filed this action contesting the results of the final less-than-fair-value (LTFV) determination. *See Sparklers From the People's Republic of China,* 56 Fed. Reg. 20,588 (Dep't Comm. 1991). The court granted the joint motion for remand by plaintiff and defendants to have Commerce conduct verifications of the questionnaire responses submitted by Guangxi and another respondent which were not verified in the original LTFV investigation.

During the verification, Commerce discovered that Guangxi did not report in its questionnaire responses the factors of production required in printing and cutting, fibre board into small packets or "caddies." Although Guangxi attempted to submit this information during the verifi-

cation, Commerce did not accept the new information. In the remand determination, Commerce used the value of Indian caddies as BIA. The remand determination increased Guangxi's dumping margin from 1.64% to 41.75%. Thereafter, Guangxi intervened challenging the remand results and moves for a second remand.

### DISCUSSION

The court shall hold unlawful any determination which is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988).

### 1. Whether Commerce exceeded the scope of the court's remand order.

The court's remand order stated, in pertinent part:

[T]his action is remanded to the Department of Commerce in order that it may conduct a verification of:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(2) Guangxi Native Produce Import and Export Corporation, Beihai Fireworks and Firecrackers Sub-Branch and its supplier company Beihai Second Fireworks Factory, Beihai, China * * *.

Order, Court No. 91–07–00501 (Dec. 30, 1991).

Guangxi argues that the remand order did not authorize the investigation of new issues because it was narrowly worded to permit Commerce to conduct a verification of Guangxi's questionnaire responses only. According to Guangxi, Commerce could not consider the information not relied on in its original margin calculation because the remand order concerned Commerce's failure to verify Guangxi's responses. Since Commerce investigated the issue of caddies which Commerce did not consider in the LTFV determination due to its absence from Guangxi's questionnaire responses, Guangxi claims that Commerce exceeded the scope of the remand order.

The court disagrees. In conducting verification, Commerce "has considerable latitude in picking and choosing which items it will examine in detail." *Monsanto Co. v. United States,* 12 CIT 937, 944, 698 F. Supp. 275, 281 (1988) (citation omitted). When the action was remanded to conduct a verification of Guangxi, the order did not restrict Commerce to verify only what Guangxi provided in its questionnaire responses. In responding to the questionnaire, Guangxi completely failed to provide the information on the factors of production for cutting and printing caddies. Consequently, Commerce was prevented from taking caddies into consideration when the original margin was calculated. If the court would accept Guangxi's position, Guangxi would be able to avoid adverse consequences of its failure to provide accurate responses to the questionnaire.

Guangxi also alleges that the issue of the factors of production of caddies was outside the scope of the remand because, prior to the remand,

plaintiff did not raise the issue before the court. In challenging Commerce's failure to conduct verification, plaintiff listed in its complaint the specific areas that it urged Commerce to verify during the LTFV investigation. One of those areas was "[t]he packing materials reported by * * * Guangxi in the questionnaire responses." Complaint paragraph 14e. A caddy is "a paper, wood, or metal case used to *package* or display." *Webster's Third New International Dictionary of the English Language Unabridged* 311 (1981) (emphasis added). The verification report of the original LTFV investigation described "Packing Workshop" as follows:

> We observed the following aspects of sparkler packing: pieces of cellophane being pasted along their edges and then folded into polybags; sparklers being counted and placed into the polybags (usually 6 per bag); flat caddies (cut and printed off site with paperboard supplied by the factory) being folded into containers; sparklers in polybags being put into caddies; 12 caddies being bundled together, by hand, with cellophane; bundles were placed onto a wooden "pallet." * * *

R. 1233. Also, in the verification report, the factors of production "for producing the printed caddies from paperboard" were included under the heading of "Packing Labor." R. 1236. Because in this proceeding packing materials include caddies, it was reasonable for Commerce to investigate the issue of caddies.

Since the remand order did not bar Commerce from investigating the information which Guangxi failed to provide in the questionnaire responses, and since plaintiff raised the issue of packing materials in the complaint, the court holds that Commerce did not exceed the scope of the remand order by investigating the factors of production of caddies in the remand proceeding.

## 2. Whether the use of best information available was appropriate.

Guangxi alleges Commerce should not have resorted to the BIA in determining the value of cutting and printing caddies. During the verification, Commerce refused to accept the new information that Guangxi attempted to submit regarding the factors of production for caddies. Guangxi argues because it was inadvertently omitted from the original questionnaire responses, Commerce should have accepted it.

Commerce's regulation provides that the submission of factual information for the consideration in a final determination shall be made not later than "seven days before the scheduled date on which the verification is to commence." 19 C.F.R. § 353.31(a)(1)(i) (1992). When the submission of the information was untimely, the statute provides for the use of BIA.

> In making their determinations under this subtitle, the administering authority and the Commission shall, whenever a party or any other person refuses or is *unable to produce information requested in a timely manner* and in the form required, or otherwise significantly impedes an investigation, use the best information otherwise available.

19 U.S.C. § 1677e(c) (1988) (emphasis added). Since Guangxi's submission of the information regarding cutting and printing caddies during the verification was untimely, the use of BIA was in accordance with law.

Guangxi also alleges that Commerce should have accepted the new information because the remainder of Guangxi's responses was verified to be accurate. Guangxi relies on a LTFV determination where Commerce accepted new information during and after the verification because "the data appears [sic] reasonable in light of the documents examined at verification." *Color Picture Tubes from Japan,* 52 Fed. Reg. 44,171, 44,186 (Dep't Comm. 1987) (final LTFV determination). Guangxi claims because Guangxi's questionnaire responses were accurate, Commerce should follow its practice in *Color Picture Tubes from Japan* to accept the new information on the basis of the accuracy of the rest of the responses. However, the kind of information received at the verification and the circumstances under which the new information was accepted are not specified in that determination. The court does not find that the practice in *Color Picture Tubes from Japan* requires Commerce to accept Guangxi's new information on caddies which was completely omitted from the original questionnaire responses.

## CONCLUSION

The court holds that Commerce conducted the verification of Guangxi within the scope of the remand order. The use of BIA for caddies was in accordance with law since Guangxi's submission of the information was untimely.